UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



NATHAN BROWN,

and

TRACIE BROWN,

    Plaintiffs,

v.                                                      Civil Action No.2:11cv309

WELLS FARGO BANK, N.A.,

and

SAMUEL I. WHITE, P.C.,

    Defendants.

## OPINION AND ORDER

    This matter is before the Court on a Notice of Removal from the Circuit Court for the City of Chesapeake, Virginia, a Motion to Dismiss filed by the Defendants, Wells Fargo Bank, N.A. ("Wells Fargo") and Samuel I White, P.C. ("SIWPC") (collectively, "Defendants"), and a Motion to Remand filed by the Plaintiffs, Nathan Brown and Tracie Brown (collectively, "Plaintiffs"). The Notice of Removal, filed by Defendants, alleges that this Court has federal-question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Defendants allege that Plaintiffs' claims arise under the Home Affordable

Modification Program ("HAMP"), a federal program which provides federal loan modification regulations and guidelines pursuant to the Emergency Economic Stabilization Act.  12 U.S.C. § 5201 et seq.  Defendants argue that Plaintiffs have failed to allege plausible claims for relief since there is no private right of action for alleged violations of HAMP.  Plaintiffs challenged the federal jurisdiction asserted by Defendants as a basis for removal and moved to remand the matter on the ground that they only alleged state-law claims of "breach of contract" and "negligence" in this matter.  For the reasons set forth below, the Court *sua sponte* **DISMISSES** this matter for lack of subject-matter jurisdiction, **GRANTS** Plaintiffs' Motion to Remand, and **REMANDS** this matter to the Circuit Court for the City Chesapeake, Virginia.  However, the Court **DENIES** Plaintiffs' request for attorney's fees.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiffs own a tract of land in Chesapeake, Virginia. Compl. ¶ 13.  On February 11, 2009, Plaintiffs received a first

---

[1] The facts recited here are drawn from Plaintiffs' Complaint and are assumed true for the purpose of deciding the motions currently before the Court.  They are not to be considered factual findings for any purpose other than consideration of the pending motions.  *See* Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

mortgage loan from Wells Fargo in the amount of $262,515. Compl. ¶ 14.   On September 24, 2010, Plaintiffs hired Heath J. Thompson, P.C. ("HJT") to represent them in obtaining a loan modification in order to avoid foreclosure.   Compl. ¶ 16.   On the same day, HJT reviewed Plaintiffs' financial data with Wells Fargo representative "Pam", who approved Plaintiffs for the HAMP program and asked HJT to fax the appropriate documents to the Wells Fargo Loss Mitigation Department.   Compl. ¶ 17.   HJT faxed the appropriate documents on the same day.   Compl. ¶ 18.   On September 27, 2010, Wells Fargo representative "Kathy" confirmed that Wells Fargo had received the documents, but stated Plaintiffs were not in the computer system for active loss mitigation.   Compl. ¶ 19.   On September 29, 2010, "Sherry" informed HJT that Plaintiffs were denied for the HAMP program because of affordability, but she encouraged Plaintiffs to resubmit an application.   Compl. ¶ 21.   HJT reviewed Plaintiffs' financial data with "Justin" and re-faxed the loan modification application.   Compl. ¶ 22.   On September 30, 2010, Wells Fargo representative "Mike" informed HJT that the foreclosure sale had been postponed indefinitely.   Compl. ¶ 23.

On October 20, 2010, Wells Fargo representative "Evelia" informed HJT that the loan modification application had been denied and to submit another one.   Compl. ¶ 24.   HJT spoke with "Justin" on October 27, 2010, regarding the loan modification

3

denial; "Justin" said that Plaintiffs were denied because of affordability. Compl. ¶ 25. HJT learned that Wells Fargo was using old financial data for their calculations, and they sent another loan modification application on October 27, 2010. Compl. ¶¶ 25-27. On November 1, 2010, Wells Fargo representative "Taylor" told HJT that the foreclosure sale had been postponed, requested more documents from HJT, and informed HJT that "James Hudson" was in charge of the file. Compl. ¶¶ 28-29. On November 8, 2010, Wells Fargo representative "Alan" requested updated paystubs, which HJT faxed on the following day. Compl. ¶¶ 31-32.

On November 29, 2010, Wells Fargo representative "Jacob" informed HJT that Plaintiffs had been denied for a loan modification on November 15, 2010, but Plaintiffs never received any notification. Compl. ¶ 33. "Jacob" informed HJT that a new foreclosure sale date had been set for December 14, 2010. Compl. ¶ 34. HJT reviewed Plaintiffs' financial data with "Jacob", who informed HJT that Plaintiffs would qualify for a Special Forbearance Plan, which he would process that day. Compl. ¶¶ 35-37. On December 7, 2010, HJT learned that the foreclosure date had been postponed. Compl. ¶ 39.

On December 29, 2010, Wells Fargo representative "Lena" informed HJT that a foreclosure sale date of January 19, 2011, had been set, and Wells Fargo was reviewing Plaintiffs' loan for

possible modification. Compl. ¶ 40. On January 20, 2011, "Alan" told HJT that Plaintiffs had been approved for a loan modification with payments beginning on February 13, 2011. Compl. ¶ 41. On February 7, 2011, "Alan" informed HJT that Plaintiffs were denied for a HAMP modification because the Plaintiffs would be more than twelve months behind on their original loan. Compl. ¶ 43.

Plaintiffs filed a complaint and sought a preliminary injunction on May 11, 2011, in the Circuit Court for the City of Chesapeake, Virginia. Plaintiffs allege Wells Fargo breached its contract to modify Plaintiffs' first mortgage and negligently processed Plaintiffs' HAMP modification application, which caused severe harm to Plaintiffs. Compl. ¶¶ 44-64. Plaintiffs also allege that SIWPC acted negligently in following through with an improper foreclosure and breached the contract established between Wells Fargo and Plaintiffs to modify Plaintiffs' mortgage. Compl. ¶¶ 65-70.

On June 1, 2011, Defendants filed a Notice of Removal, which removed the action to this Court. Defendants claim that this Court has jurisdiction over the matter since the outcome of Plaintiffs' claims will require resolution of substantial questions of federal law. Notice of Removal ¶ 2. Defendants also allege that this case is one "arising under the Constitution, laws, or treaties of the United States" pursuant

to 28 U.S.C. § 1331.  Id.  On the same day, Defendants also filed a Motion to Dismiss this action.  Docket No. 4.  On June 22, 2011, Plaintiffs filed a Motion to Remand this action to state court.  Docket No. 6.

## II. STANDARD OF REVIEW

The Court must first determine whether it has federal-question jurisdiction over the claims at issue.[2]  Federal-question jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 if Plaintiffs' claims are ones "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Such federal-question jurisdiction can be exercised over a state-law cause of action implicating federal law if "it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'"  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005) (quoting Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199 (1921)).  If the Court has federal-question jurisdiction over the claims at issue, the Court may also exercise supplemental jurisdiction over the state-law aspects of Plaintiffs' claims pursuant to 28 U.S.C. § 1367 when they "are so related to claims in the action within such

---

[2] Defendants do not allege diversity of citizenship jurisdiction as a ground of federal jurisdiction pursuant to 28 U.S.C. § 1332, and thus, the Court will only consider whether federal-question jurisdiction exists.

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

"[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). This principle is embodied in Rule 12(h)(3) of the Federal Rules of Civil Procedure, which provides that '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Moreover, a court has an independent duty to ensure that jurisdiction is proper and, if there is a question as to whether such jurisdiction exists, must "raise lack of subject-matter jurisdiction on its own motion," without regard to the positions of the parties. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). Accord Plyler v. Moore, 129 F.3d 728, 731 n.6 (4th Cir. 1997) ("[Q]uestions concerning subject-matter jurisdiction may be raised at any time by either party or sua sponte by [the] court.") (citing North Carolina v. Ivory, 906 F.2d 999, 1000 n.1 (4th Cir. 1990)); UTrue, Inc. v. Page One Sci., Inc., 457 F. Supp. 2d 688, 689 (E.D. Va. 2006) (stating that "federal courts are obligated to confront and address jurisdictional defects *sua sponte* 'whenever it appears the court lacks subject matter

jurisdiction'") (quoting <u>Lovern v. Edwards</u>, 190 F.3d 648, 654 (4th Cir. 1999)). This principle is reiterated in paragraph (c) of 28 U.S.C. § 1447, which further provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### III. DISCUSSION

As noted above, Defendants have removed this case to federal court solely on the ground of federal-question jurisdiction pursuant to 28 U.S.C. § 1331. Notice of Removal ¶ 2. Plaintiffs argue in response that "federal question jurisdiction is improper because Plaintiffs' claims rely on state law theories of contracts and tort, not potential alternative federal law theories of liability." Pls.' Mem. of Law in Supp. of Mot. to Remand 5. On the other hand, Defendants allege "that the Plaintiffs in the instant case are attempting to recast their allegations of HAMP guideline violations as state law claims." Defs.' Br. in Opp'n to Pl.'s Mot. to Remand 8.

As a threshold matter, the Court *sua sponte* considers whether it has subject-matter jurisdiction over this matter. Although Plaintiffs only allege state-law claims in the Complaint, the Complaint also frequently refers to HAMP procedures and guidelines. However, for the following reasons,

8

and consistent with its prior decisions, the Court concludes that the *mere reference* to HAMP procedures and guidelines in state-law breach of contract and tort claims is not sufficient to create federal-question subject-matter jurisdiction over this matter. 28 U.S.C. § 1331.

To fully understand how a complaint's allegations affect the manner of addressing cases that involve HAMP, it is important to start with a discussion of whether HAMP creates a private right of action. Federal courts have uniformly held that relief cannot be granted to private plaintiffs for HAMP claims because HAMP created no private cause of action for borrowers against lenders, but instead delegated compliance authority to Freddie Mac. Nelson v. Bank of America, N.A., No. 11-11091, 2011 U.S. App. LEXIS 22255, at *4 (11th Cir. Oct. 31, 2011) ("We agree . . . that nothing express or implied in HAMP gives borrowers a private right of action."); Bourdelais v. J.P. Morgan Chase Bank, No. 3:10cv670, 2011 U.S. Dist. LEXIS 35507, at *9-10 (E.D. Va. Apr. 1, 2011) ("Courts universally rejected these claims on the ground that HAMP does not create a private right of action against lenders and servicers."); Pennington v. PNC Mortg., No. 2:10cv361, 2010 U.S. Dist. LEXIS 143157, at *10-11 (E.D. Va. Aug. 11, 2010) ("The applicable statute, 12 U.S.C. § 5229, does not expressly create a private right of action against participating mortgage servicers. Instead, it allows

9

those aggrieved by the actions of the Treasury Department to sue the Secretary of the Treasury .... The creation of this private right of action against the Secretary of the Treasury, coupled with the delegation of enforcement authority to Freddie Mac, strongly implies that Congress did not intend to create a separate cause of action against participating mortgage servicers.").

The absence of such a private right of action impacts the Court's analysis of allegedly deficient claims in different ways depending on how HAMP is included in a complaint's allegations. For example, in cases that *directly allege* causes of action for violations of HAMP itself, this Court has inferred the existence of federal-question subject-matter jurisdiction and dismissed the claims on the basis of Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fowler v. Aurora Home Loans, No. 2:10cv623, 2011 U.S. Dist. LEXIS 73344, at *4 (E.D. Va. Mar. 31, 2011). However, when presented with removed cases that allege state-law breach of contract and tort claims that *merely reference* HAMP guidelines and procedures, this Court has consistently held that it lacks federal-question subject-matter jurisdiction over such claims. Ellis v. Wells Fargo Bank, N.A., No. 2:11cv151, U.S. Dist. LEXIS 86587, at *4 (E.D. Va. August 5, 2011); Asbury v. Am.'s Servicing Co., No. 2:11cv99, 2011 U.S. Dist. LEXIS 87552, at *9-10 (E.D. Va. July

13, 2011) (finding that "no private cause of action exists under HAMP, and congressional intent would be frustrated by this Court exercising federal question jurisdiction"); Paine v. Wells Fargo Bank, No. 2:11cv89, 2011 U.S. Dist. LEXIS 83016, at *12 (E.D. Va. July 12, 2011) (finding "that Plaintiffs' right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law, particularly where federal law does not create a private right of action"); see also Sherman v. Litton Loan Servicing, No. 2:10cv567, 2011 U.S. Dist. LEXIS 71756, at *7 (E.D. Va. July 1, 2011) (noting that the matter would have been dismissed for lack of subject-matter jurisdiction had diversity of citizenship not provided an alternate jurisdictional basis).

Plaintiffs' removed state-court Complaint only alleges state-law contract and tort claims, not a federal HAMP violation cause of action.  Therefore, because Plaintiffs' Complaint merely references HAMP guidelines and procedures, and does not attempt to allege directly a federal HAMP violation cause of action, the Court concludes that there is no federal-question subject-matter jurisdiction.  In other words, Plaintiffs' right to relief for the state-law claims does not necessarily depend on resolution of a substantial question of federal law, particularly where federal law does not create a private right

of action. See Merrell Dow Pharm. Inc. v. Thomas, 478 U.S. 804, 808 (1986).

In light of the Court's conclusion that it lacks subject-matter jurisdiction over Plaintiffs' claims in this matter, the Court does not reach a decision regarding Defendants' Rule 12(b)(6) Motion to Dismiss for failure to state a claim. Instead, the Court will grant Plaintiffs' Motion to Remand pursuant to 28 U.S.C. § 1447(c), because there is no federal subject-matter jurisdiction based on Plaintiffs' mere references to HAMP guidelines and procedures.

## IV. REQUEST FOR ATTORNEY'S FEES

The Court now turns to Plaintiffs' request for attorney's fees in their Motion to Remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The test for requiring payment of attorney's fees "should turn on the reasonableness of the removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."). Although district courts within the Fourth Circuit have repeatedly dismissed cases substantially identical

12

to the instant one—many filed by Plaintiffs' counsel, Heath J. Thompson, P.C.—the United States Court of Appeals for the Fourth Circuit has not yet addressed the issue of whether such cases may properly be removed to federal court on the theory that state-law claims merely referencing HAMP procedures and guidelines invoke federal-question subject-matter jurisdiction. Therefore, in the absence of controlling precedent to the contrary, Defendants' removal of the instant case to this Court cannot be said to be objectively unreasonable. See Kluksdahl v. Muro Pharm., Inc., 886 F. Supp. 535, 540 (E.D. Va. 1995) (denying plaintiff's request for costs and fees for the removal of a case to a federal court when district courts had decided an issue but the Fourth Circuit had not yet issued a decision on the issue). Consequently, Plaintiffs' request for attorney's fees will be denied.

### V. CONCLUSION

For the reasons stated above, the Court *sua sponte* **DISMISSES** this matter for lack of subject-matter jurisdiction, **GRANTS** Plaintiffs' Motion to Remand, and hereby **REMANDS** this matter to the Circuit Court for the City of Chesapeake, Virginia. Additionally, the Court **DENIES** Plaintiffs' request for attorney's fees.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                                        /s/ Mark S. Davis
                                            _____
                                                      Mark S. Davis
                                            UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 15, 2011

14